The next and last case on our agenda is Robert Berg of Appearing Pro Se versus the Village of Scarsdale and the Village of Scarsdale Police Department. Mr. Berg, you're pro se but you are an attorney by training, correct? Yes, Your Honor. Good morning. May it please the Court. I'm Robert Berg, the plaintiff, appellant, cross-appellee, appearing pro se. I'm also a member of the bar of this Court. We're here on de novo review. My case is a lot simpler than the case you just heard. This appeal addresses the First and Fourteenth Amendment violations that took place in the Village of Scarsdale when I and other residents placed political lawn signs supporting the 2018 school facilities bond on the lawns in front of our homes at the end of January 2018 and the beginning of February 2018. The bond opponents called the police and complained. The police came out in force and in unprecedented action over several days, they removed more than 80 of these political signs. And only on one side of the issue? Well, these were signs that were placed in the first 13 feet of the lawn, between the lawn and the curb. But isn't it your allegation that they only removed signs on one side of the issue? No, no. My allegation is they only removed political lawn signs while leaving commercial, nonpolitical lawn signs. But you're not a commercial signer, so where would you have standing to make that claim? I'm not complaining about – I'm complaining that they targeted political signs, my political signs. Tell me what your as-applied challenge is. Excuse me? Tell me what your as-applied challenge is. Well, first, I have facial challenges to the two laws that are in place. The first law is section 196-17, which I claim is – Your as-applied challenge is that they favored commercial signs. That's your as-applied challenge. No, no, no. Well, yes, that is my – they favored – And section 4 says you don't have standing. You're not a commercial entity. Yeah, that's right. You're complaining about political signs. They were selectively favoring commercial signs while taking away my political signs. That's selective enforcement based on – So you're not a commercial signer. You wouldn't have standing to make that claim because you were not damaged. I'm damaged because they took away my political sign. They were not enforcing the statute equally. They were enforcing it selectively against political signs. But what the court found below is that there had been discrimination prior to this episode of which you complain, and that discrimination was in favor of political speech relative to commercial speech. Correct. That's the basis on which you won the as-applied challenge. No, no, no, no. Well, I won – his reasoning was wrong. The result was correct, but his reasoning was wrong. So I did not appeal because I won the – You did win. On that point. That's why the village is cross-appealing. But it sounds like you won on a basis that even you agree you didn't have standing to win on. Correct. But I won, so I didn't – you – this is de novo reveal, so you can search the record. The record supports – They are cross-appealing. They are cross-appealing that. Correct. So you have to defend that. You have to defend their cross-appealing saying that decision was wrong. You have to tell us why you would have standing as someone who is using political signs to – to enforce a selective enforcement claim based on the district court's theory. The district court came out with a decision saying – The district court said they're favoring political signs. That's selective enforcement. But that's to your benefit. It is to my benefit. Right. So you don't have standing to assert that. A commercial entity could say they're favoring political signs. That's the point. He ruled for the wrong reasons the right way. Okay. And the evidence supports me on that. Let me just ask you, there's no evidence with respect to your First Amendment claim that the no signs were in the public right away. In other words, they did take the yes signs out of the public right of way. Yes. But you didn't, for example, allege there was no evidence that they left the no signs in the public way. There were no no signs in the public way. Right. But there were commercial signs all over the public way. There were hundreds and hundreds of commercial signs in the public right of way that they ignored while taking down the vote yes signs. So they're engaging in a campaign. They're selectively enforcing their law, which is, by the way – Did you allege that they only took down the vote yes signs? Yes. Didn't take down the vote no signs? The vote no signs were not in the public right of way. So they're not relevant to the case. And for First Amendment purposes, it was facially neutral, in other words. No. The laws are not facially neutral. Why not? They're just saying we don't want signs in the public way. But they're doing that not referring to the law. The law itself is a facially unconstitutional law, Section 196-17. It's part of Chapter 196, which is a statute – But why does a facially unconstitutional say we don't want signs in the public way? That's not what the law says. The law doesn't even talk about the public right of way. You have to look at the language of the law, Your Honor. I look at the language. It says it has a long list of things, but then it says or other public places. It doesn't say public right of way, but if it has a long list of every type of public – It doesn't, Your Honor. And then it says or other public places. If I may, Your Honor, Section 196-17 is part of Chapter 196, which is entitled the Scarsdale Anti-Litter and Handbill Law. So that statute has a whole number of provisions which are content-based. They apply to certain ways to commercial handbills versus noncommercial handbills. They treat them differently. That statute, if you do a strict scrutiny analysis, is unconstitutional, and there's no severability clause in the chapter, so you have to call that whole chapter unconstitutional. If you look at Section 196-17, it really doesn't apply – it doesn't apply – well, to me, that's a post-no-bills ordinance. It's basically you can't stick a handbill on a certain type of an outlet. It's a sign, notice, placard, poster. It's not handbills. Or other advertising medium, or it's all referring to advertising mediums. This, remember, is talk – the statute talks about – the chapter talks about handbills, commercial handbills, and noncommercial handbills. It doesn't say commercial. It doesn't say commercial. If you look at the chapter and you look at the other provisions, it all defines handbills as commercial handbills and noncommercial handbills. It's part of an anti-littering and handbill law. It's not a part – it doesn't apply to political signs in the right of way. It has nothing to do with that. Mr. Berg, you've reserved three minutes for rebuttal. Okay. Otherwise, your time has expired. We'll hear from the village. And I think we're going to hear from the village by Zoom. Yes, good morning, Your Honor. May it please the Court, my name is Terry Rice. I represent the village of Scarsdale, both in opposition to Mr. Berg's appeal and on our cross-appeal. I want to thank the Court for allowing me to appear by Zoom. And since this is a cross-appeal and Mr. Berg has reserved some rebuttal time, I would also request that I have two minutes rebuttal time after he speaks. All right. We'll take it out of your time now. Thank you. Appreciate it, Judge. The first thing I want to, just before I go through my presentations, Mr. Berg, and start talking about people playing songs up in front of their homes. I'm just confused. I'm sure the Court is aware of this because I think you've read this in great detail. We're talking about this right away. The sound that we're getting from you is distorted. So I don't know what to say. Keep talking. But it's hard to understand you. Can you hear me any better now, Judge? Yes, a little better now. I'm sorry, but the point I wanted to make was that Mr. Berg started out with saying, talking about people putting songs up in front of their homes. In this case, it's not about songs in private property, which, of course, is a deal, but it's about funds on the public right. I'm not aware of that, but it's an important point. It's a law rhetoric. There is a 13-foot record wage on each side of the right of way. A road in the middle and 13 feet. And it's regulated to proliferate and proliferate. Clearly, they're on-site. We're having a great deal of difficulty hearing you because the audio is coming in and out. The appellant argued that the summary judgment record showed that there were hundreds and hundreds of commercial signs in the public right of way that were not removed at the time of this action of which he complains. Do you agree with that assessment of the record on summary judgment? I don't know, Your Honor, about hundreds and hundreds. The assessment of the sign regulations was completely driven. Isn't that a terrible way to enforce this? You run the risk then, for example, if the village's practice is to let political signs in the right of way unless there's a complaint, you run the risk that on one side of a political election or political debate, if they call in to the police, they could get all the opposing parties' signs down and have all theirs remain up. Isn't that a terrible approach to this? Well, I think you have to put that into the context that the police department, the enforcer of the law, has, according to the record, about 12,000 calls to the well-to-do community to conserve burglaries. You're representing the police department as well, aren't you, counsel? Yes, Your Honor. Okay, just go on. But do you understand my point? Don't you see what could be done? I do, but that's not what has occurred in this particular instance here. The court is aware of the two events and complaints. There were no other signs on the other side of the village election in 2017, which is actually not a subject of the complaint, but it's mentioned in it. The opposing slate did not have any signs whatsoever. It's only Mr. Ferg's party signs in the right-of-way. And with the school bond election, Mr. Ferg was a proponent of a record in the right-of-way. Those signs were all on the property, so there was no discriminatory effect here. And with respect to the commercial sign, the village has handled them in essentially the same way that they generally would handle a political sign. That is, if a complaint is received, they approach the offending company and say, remove your sign. Don't. In this instance, they issue a summons. The records, I believe there were probably—I don't remember the exact number, Judge— summonses issued to commercial signs over a four-year period. There were no summonses issued with political signs. They've attempted to accommodate the political signs, and they have attempted to get rid of the commercial signs. It would be a monumental effort to get rid of every sign in the village, and that's why I said that the police department has many priorities, and getting rid of signs is not necessarily the most important priority at all times. But I think the important factual situation with the Assembly Challenge is that prior to 2017, there were very few signs ever posted in the village. It was only with the 2017 election where there was a proliferation of signs, and the police department responded, as we've discussed here, in what is clearly a very non-discriminatory manner. Doesn't the village have code enforcement personnel independent of the police department to enforce village code provisions? They have some number of code enforcement officers, but it's always been the police that is— I don't think anybody else has ever enforced it. The Department of Public Works has to some extent, but I don't think the code enforcement officers have. All right. Thank you. You've reserved two minutes for rebuttal. We'll turn back to Mr. Berg. You have three minutes for rebuttal. Thank you, Your Honor. You should talk about what you wanted, because that's the cross-appeal. You wanted an as-applied challenge, correct? Yes. Your Honor, there's a very rich factual record here, and there's a very important affidavit that the police chief, Maturo, attached with an exhibit. It's on A770 to A772. It shows that during the 12-year period, 2006 to 2018, they did a search on the police database for village code and sign. It turned up that there were 97 potential police dispatches for village code and sign, so that's an average of eight police dispatches for possible code sign violations for both commercial signs and political signs per year, and they do 18,000 to 20,000 police responses per year. So that's 0.04% of police responses are for sign enforcement for both political and commercial signs. There have only been two sign enforcement blitzes in the remembered history of Scarsdale. Both occurred, and one occurred in 2017 when I ran for mayor with a political slate that challenged their political system, and the second time was in 2018. Maybe you were the first person. They said there was a proliferation for the first time of signs in that time period. Maybe in those prior years, people weren't doing it. Maybe you were the first person to put them up everywhere in the right of way. There were, well, the police. Other than commercial. That's not true. They had a policy, as both the village manager and police chief said, for 30-plus years of tolerating political signs in the village right of way during election season, so long as they were taken down after the election. Maybe there weren't a lot of them, and so there were no complaints, but then when there was a proliferation. No, because I ran. That's actually what happened, because I ran and challenged their political, their strange political system of one-party rule in Sarasota, so my opponents all came out and complained in 2017 to the police and to the village manager, and they took down our signs the night before the election. And then in 2018, there was a very vocal group that was opposed to the school bond, and they complained, so the police dutifully acted as their agents and came out and took down 80 signs over a period of several days. Unprecedented. Both are unprecedented uses. They took down the vote yes signs? The vote yes signs. Were there vote no signs that they didn't take down? Yes, but again, those were out, not in the village right of way. You have to understand, in Scarsdale, there were no sidewalks in the residential zones, so the village right of way goes from the street side curb up 13 feet onto the front wall. So you can have as many vote yes signs as you want as long as they're 13 feet from the curb? But that defeats the purpose because no one can see it when you're driving down the street. If it's 15 feet up on your lawn, every political sign that you see is a foot or two away from the road. But you're at a disadvantage because the vote no signs weren't in the right of way. They had the same issue that you would have. That's true, but the village right of way is a public forum. There has to be a rational purpose that the government has for its policy and the law. That's why you prevailed on your as-applied challenge. Excuse me? That's why you prevailed on your as-applied challenge. Yes, Your Honor. Sir, your as-applied challenge is predicated on the notion that they're taking down political signs but leaving up commercial signs in the public right of way. Yes, exactly. And you said hundreds and hundreds of them. Yes, and I have examples in my affidavit. What is the best record evidence that there were hundreds and hundreds of commercial signs in the public right of way left intact where they were when this en masse removal of political signs occurred? I have several sworn affidavits by myself in the record. The village never deposed me, and they never challenged that. And I have in the complaint, I took photos, which are part of the complaint, and those photos are also in my affidavit where I describe each individual sign. It's kind of hard to tell from those photos whether they're 13 feet from the curb or not. They're very easy to see. You can see they were a foot or so, most of them, from the curb, maybe two feet. It's obvious. I was very careful when I prepared my complaint in my record to make sure that anyone could see that they were very, very close to the curb. All right. Thank you. Thank you, Your Honor. Mr. Rice, you're reserved two minutes for rebuttal on the cross claim. Thank you, Your Honor. Just a couple of quick points. First of all, can I emphasize that in the prior years, again, the 2015 Siena sign, the one sign that I believe was least remembered was for the county executive's race for minister of strength. And that was taken down. But there were very, very few. Now, very disturbingly, Mr. Berg tries to create a false narrative here when he makes it sound as though this was something against him because he's running the village board. And it's absolutely untrue. It's absolutely untrue. And I've said enough times in this hearing. Berg's thoughts in both instances were effective and were in a real way in the political direction of the other slant candidates. And that's right. Counsel, can I just ask you, you're breaking up a little bit. I'm hoping I can hear your answer to this. Even if he doesn't have standing on the as-applied selective enforcement claim that the district court ruled on, what about his claim that he has a selective enforcement claim because the commercial signs are not taken down? What's your response to that? Well, Judge, I don't think there's any evidence or record to substantiate it. It has photographs in it that are snatched up at one point and I think have no evidence to revalue what's been said. I'm sure that if in any community at any particular time someone was at the area going to see something, and here as well. But the enforcement has been at all signs, political and not political signs. And I think the record holds a different view. Were there ones in the record where there was a complaint about a commercial sign and it was taken down? Was there any evidence of that? I don't think it was ever dealt with directly. There are certainly plenty of that in the record. Commercial signs have to be removed if they weren't taken down by the author or in a number of instances. The tension that commercial signs were favored is reported by the record and in fact is untrue. Thank you, counsel. Thank you, Judge. That is the last case on our calendar, so I'll ask the clerk to adjourn court.